for the appellate, Mr. Graham, and for the appellee, Mr. Kendall, and Ms. Crockett, you may proceed. May it please the court, counsel. This is a case where the trial judge abused her discretion by failing to award or arbitrarily denying attorney fees that were incurred in consideration of an I-864 affidavit of support. The court denied recovery of those fees that were incurred because of the defense of an ARDC claim, the defense of a forcible entry and detainer case, and the prosecution and defense of the dissolution of marriage action. The question in each of those instances was whether the attorney fees that were entered into between Himal Panchal and the United States government and the contract between the sponsor and a household member that was entered into between Vena Panchal and Himal Panchal, which essentially obligated Vena Panchal to indemnify Himal for any loss that he might occasion as a result of the failure to provide that support. As far as the court's determination is concerned, we have conceded in our brief that the ARDC complaint, the defense of the ARDC complaint, was probably not related to the collection of the I-864 support. But at the same time, the defense of the ARDC complaint was identical to a motion to substitute Jagruti Panchal's attorney out of the case as a result of a The amount of time that was spent on one is approximately the amount of time that was spent on the other, but I believe we came to the determination when we took a look at the contents of the statement of time and expenses that were charged in the matter that the total amount of time charged in the defense of the ARDC complaint was something in comparison to the total amount of fees and costs that were generated as a result of the entire proceeding. As far as the dissolution action is concerned, I think I would consent that the dissolution action all by itself, as far as the status of the party's marriage is concerned, and the dispute over that, if there was a dispute over that, is probably not going to be assessment of maintenance. There was no basis for the assessment of attorney fees. And in the initial complaint for dissolution of marriage, which was filed by Himal Panchal, the response to that by Jagruti Panchal was to file essentially an affirmative defense in the body of her answer, alleging specifically the obligation that was imposed on her. Himal Panchal filed and sought leave and eventually filed a petition for declaration of invalidity of marriage. And Jagruti Panchal then filed a counterpetition for dissolution of marriage. But in each of those instances, the I-864 Affidavit of Support and the obligation that it imposed were the only obligations that were contested between the parties. In none of those situations was there ever a case where any other issue was contested. In the original, as I already mentioned, in the original petition for dissolution of marriage, it was alleged as an affirmative defense. In the counterclaim or counterpetition that was filed in the third party complaint that was filed against Veena Panchal, it was dissolution of marriage matter was resolved by agreement between the parties. And the resolution of the dissolution of marriage matter was to leave everybody pretty much as they existed before. All of whatever debts that Himal had stayed with Himal. All of whatever Jagruti had stayed with Jagruti. There was no obligation of support or maintenance that was imposed. And there was no obligation of indemnities that was imposed between the two of them in that particular matter. The amount of the fees that were eventually, I think, expended just specifically related to the dissolution of marriage matter were something in the neighborhood of $1,300 or $1,400. And again, not appreciably significant in the total picture here where approximately $65,000 were expended either prosecuting or defending the claim with respect to the I-864 affidavit of support. As far as the forceful entry and detainer matter was Himal to provide Himal and Jagruti and their family a place to live after she came to the United States. When Himal separated from Veena, he filed a petition for dissolution of marriage and his brother at almost exactly the same time filed this forceful entry and detainer matter in Will County, Illinois. Seeking essentially to boot Jagruti and her kids out of the townhouse. Now, the allegation has been made all along that Vicarant Panchel did not owe an obligation of support to Jagruti and that's true. But under the I-864 affidavit, Veena and Himal both owed an obligation of support to Jagruti and both of those are subject to being protected under an I-864 affidavit of support as is stated in the Wood case that we cited to you in our basis of the falsity of the charge, which is something that was evidenced during the course of the trial in this matter that assessed finally the obligation of support on Himal and Veena Panchel. But also on the basis of a stay, our request for a stay of that proceeding pending the determination of the support case in Coles County, which we felt at the time was an obligation to allow Jagruti and her children to remain in that particular residence. Now, there was also, during the course of the trial in this case underlying this, just as a matter of support for the position, although I understand it's not direct, there was testimony provided by Vicarant Panchel that the value of the rental, the reasonable value of the rental of that particular piece of property exceeded the amount of the support obligation that his brother and his mother had contracted to provide to Jagruti Panchel. And therefore, by extension, they shouldn't owe any additional support obligation. And in fact, when the jury rendered its determination, the jury did offset a certain amount of money from its award in consideration of that provision of that housing. It was adjusted, well, I can't tell you the exact number, but the jury awarded $8,729.29 as the total damages to which Jagruti and her children were liable. was entitled, but then reduced that award to $6,431.39 to accommodate the support that Jagruti had received during 2010, during January through May, which was the period of time during which Jamal did not reside in the house and didn't provide any support other than the provision of the house by his brother Vicarant. So, again, as was the case with the dissolution of marriage action, the forcible entry and detainer case in Will County was defended specifically on the basis to try and collect and enforce Jagruti Panchel's right to receive this I-864 affidavit of support benefit. During the course of the hearing on attorney fees, neither the court nor the original plaintiff in this matter inquired of me, since I was the one that was providing the evidence, about the amount of the fees generated on either basis. There was a lot of testimony about contact that I had had with a referring attorney in Chicago, and there was a little bit of testimony about the nature of the forcible entry and detainer case. But other than that, nobody asked, neither the court nor counsel for Jamal and Vina Panchel, what the breakdown of attorney fees was with respect to any particular phase or any particular action, prosecution or defense, relative to this matter. And the review of that record, and it is provided as a part of our petition for attorney fees, indicates the expense related to each was pretty small compared to the total amount of the fees that were expended. As far as the divorce case I've already mentioned, I believe the total amount of the fees accumulated were about $1,300 or $1,400. As far as the forcible entry and detainer case was concerned, I believe the total amount of the fees that we spent were about in the neighborhood of $5,700. Counsel, the standard of review is abuse of discretion, correct? I believe that is the case. This trial judge allowed $42,000 in attorney fees, correct? Correct. And the judgment was for the amount of $6,431, correct? Correct. So put aside the ARDC complaint for forcible entry and detainer and the divorce, how can this court conclude that no reasonable person can take the view adopted by the trial court that $42,000 in attorney fees was reasonable because the judgment itself was only $6,400? Well, the judgment for that period of time was $6,400, but the other judgment that was entered in the matter was one for specific performance. And these were all things that were hotly contested during the course of the proceeding. That $6,400 that was awarded in that case included an offset of something in the neighborhood of $1,500 or $1,600, as I just mentioned. But that was for a period of time for approximately one year's worth of support. The obligation to provide the support under the I-864 affidavit is to provide 125% of the poverty guideline each year less whatever it is that the immigrant can earn on her own. So the total, and it extends for a, it could extend for a shorter period of time, but it extends as long as the immigrant remains a permanent resident of the United States, does not become a citizen of the United States, and continues to reside in the United States under that status. And that period of time can last as long as 40 employment quarters or 10 years. I'm sorry, 400 employment quarters or 10 years. So that amount of 25, in this case it's about 25, I think it's still in the neighborhood of 125%, is about $25,000 a year. The amount of that total award over that period of time if the immigrant does not work would be $250,000. Now, that's not the only way to justify the total amount of the attorney fees you're on. And the way we have to justify the total amount of attorney fees in this case is by what work had to be performed under the circumstances, what was a reasonable rate for undertaking that effort, and whether the total amount of the fee is justified by, in this case, the result and the effort that had to have been provided. Now, when I say that this case was pretty hotly contested from beginning to end, I think there were times when Mr. Panchal's attorney may have crossed the line. I know that we spent a lot of time... Well, I presume the trial court took all of this into consideration in coming up with the amount of $42,000 in attorney fees. Well, I presume that also, Your Honor. But at the same time, there's no correlation, and there could have been, between the amount that's awarded as attorney fees and the amount that was... the difference being the amount that was awarded as attorney fees and the amount that was discounted. The $25,000 is just a rough, arbitrary figure. It doesn't really have anything to do with anything. It doesn't relate to the total number of hours that were spent. It doesn't relate to the hourly rate. It doesn't relate to the work that was performed. It just doesn't have any basis when the record does include a basis that would allow that computation. She specifically indicated that she was not going to award fees for a dissolution of marriage action. And we can compute the amount of time we spent working just on the dissolution of marriage action. Not conceding that it's not relevant or not applicable to that situation, but we can compute that amount. Our position is that we had to go through that effort in order to collect the amount of support. Their position is we didn't have to go through that effort specifically to collect that amount of support. But the bottom line here is that the judge awarded essentially one full year's worth of support out of those attorney fees for this particular party. And under the circumstances, that's just too much of a burden to bear. Would any other reasonable person come to the same conclusion? Based on the criteria we have in order to make that decision, I don't think so. I think that a reasonable person sitting in the same seat that Judge Ryder was sitting in at that time, knowing that there is a basis to establish the amount of the attorney fee from the information that's provided, on the basis that she wants to assess it, would either find a way to have counsel determine what that amount is and present it to her, or determine it on her own from the information that was provided. Now, granted, as I indicated before, our position was that all of the fees that were generated during the entirety of this process were generated as a result of the collection or in favor of the collection of this obligation of support. But if we determine somehow that the dissolution of marriage action all by itself didn't affect the collection of that support obligation, well, we know from looking at the record that we've spent about $1,300 and some odd dollars, $1,300, $1,400, just in relation to the dissolution of marriage obligation. If we know that we're not going to allow the defense of an ARDC complaint to affect the attorney fees and collection of the support obligation, well, we know that the defense of that ARDC complaint cost $887 or whatever the number was that we mentioned in our brief. We know that if we're going to take the position that the forceful entry and detainer claim is unrelated to the collection of that support obligation, then we can look at the record and see how much time and effort we spent relating just to the forceful entry and detainer case. But to arbitrarily just say $25,000 is the number, I'm just going to remit this by $25,000, doesn't get us to the point that the judge started out at, which effectively is that the attorney fees are what is being charged, are properly what is being charged, less things that shouldn't have been necessarily incurred in the collection of the support obligation. The judge determined that that amount was $25,000. It appears to me that even if we take that position, the amount should be something around the neighborhood of $7,500 or $10,000. But it is a big obligation, and it's a big obligation from the standpoint that Ms. Panchal has been effectively prevented from receiving a full year's worth of support, assuming she didn't work at all, and maybe longer than that if she did, as a result of the judge's decision. So what we would ask the court to do under the circumstances is either to award the total amount of the attorney fees that were charged in that situation, or to remand the matter back to Judge Ryder for determination as to what are those amounts so that we can make that proper determination, if that is in fact the case. Thank you. Thank you. Your Honors, may it please the Court? Your Honors, plaintiff argues that we can identify that which relates to the marital proceedings, that which relates to the eviction proceedings, and that which relates to the ARDC proceedings. In fact, the trial court found that the entries were imprecise, and when counsel argues that we can identify the amount of fees related to the marital disillusionment, if you look at the reply brief, the first entry that they claim relates to the marital disillusionment proceedings is on December 6, 2011, which is 23 months after the marital disillusionment proceedings were filed. So to argue that for 23 months, all of the marital disillusionment proceeding entries related wholly to the marital disillusionment proceedings, I'm sorry, related to the I-864, is not supportable by the record. The court found in awarding fees that the entries were imprecise, and so that is a problem. We are stuck here with a record where we have to take counsel's word for it. The burden below was on the parties seeking the fees to demonstrate that they had a right to them and that they were reasonable. The burden here, as Your Honor pointed out, is that the trial court did not strike it on the avalanche to prove that the trial court abused its discretion, which respectfully has not been demonstrated either here today or in the briefs. With regard to the nature of the proceeding, the I-864, it's important to remember, is a financial obligation to provide 125% of the poverty guideline. Less the amounts which the sponsored party earns or receives as income. It's a pretty straightforward calculation, and because of that, there was no need or justification to infuse into the eviction proceedings or into the marital disillusion proceedings the I-864. The I-864 should have always been a separate proceeding, in which case then we would be able to identify that which relates to the I-864. The billing entries do not, unlike the case of the Uemana case, where the court commented in awarding approximately $14,000 in fees in that case, that the entries were specific as to what was being done, what it related to, and were oftentimes down to one-tenth of an hour. Here we have entries that are by the day, but they're not broken down within any particular day. The 125% of the poverty guideline financial support obligation triggered by the I-864 does not require a sponsoring party to provide housing. To raise as an affirmative defense in the eviction proceeding, hey, we have this I-864, they're obligated to provide housing, was incorrect. Now, throughout these proceedings, the plaintiff referenced and quoted from a separate document, the I-134. The I-134 is not contractually binding, like the I-864 is, and that's what the claim is under. Under the I-134, Hemal Panchal had said his intent or promise to provide room, board, and basics necessary. And that's the language that's quoted throughout the pleadings and filings by the plaintiffs. The I-134 not only was not related to the eviction, the merit of dissolution of the ARDC, but it also wasn't even related to the I-864. And I know I use the word promise, and I'm not sure exactly what the words are, but the case law is that the I-134 is not contractually binding, the I-864 is contractually binding. And that's the grounds on which the trial court ruled in any event. And so, all of this confusion, lack of certainty, and, quite frankly, excess of attorney's fees, was in part driven by these claims. And I've said it again here today, the duty to indemnify. There's no duty to indemnify under the I-864, none. It's supposed to be straightforward. Take 125% of the poverty guidelines, find out what the sponsor party has received in income. The difference is what the sponsor has to pay. And it's a contractual obligation between the sponsor and the federal government. It's enforceable by the sponsor, so it's proper, if you will, to bring a claim under the I-864. But it's not proper to infuse it into the marital disavowal proceedings or the eviction proceedings. Now, interestingly, if we looked at just the amount of money billed after October 5, 2011, which is when the divorce proceedings were severed from the I-864 proceedings, when the L case was created. The amount of those fees is $29,000. And so what we do know is that the court did award some fees for the pre-creation, if you will, of the law division case. Now, counsel's right, we don't know with exactitude, these entries were included, these were not included. And I would look to the Callahan case, Your Honors. In that case, the court affirmed a determination of fees in the amount of $36,000. It's not an I-864 case, it's just a fee case on a contingent fee matter where the lawyer was terminated. And counsel said, well, we spent about $720 representing the guardian, 500 of which we estimate was expended on behalf of the estate. At $100 an hour, that would be $50,000, the trial court awarded $36,000. On appeal, the Illinois Supreme Court quoted the trial court's opinion. And I guess I won't read the whole thing here, but the trial court's opinion there cited factors. We took this into account, we took that into account. All of those things were considered and were taken into consideration by the court in fixing the amount of $36,000. That was affirmed on appeal. Looking at whether or not the trial court abused its discretion, I think it's fair and appropriate to consider the record as a whole and determine, is this amount, given all the things that the court has identified, is it within the realm of something that a reasonable person could have reached? And there's nothing in the briefs, or in the argument today, that would warrant defining that the trial court abused its discretion. I want to, if I could, Your Honors, talk briefly about the one case that was cited with regard to the eviction proceedings, the Wood-Schultz case. Now, that's not a fee case, but it is an I-864 case. And in that case, the plaintiff, the sponsored immigrant, came to court for an ex parte TRO to be allowed to stay in her home. The trial court, under the I-864, did allow that. They cite that in support. Now, a couple of things. One, the party that was providing support there was the husband who was the sponsor. Here, as counsel acknowledges, the house in which the plaintiff was staying was not owned by the sponsors. Number one. Number two, a finding on an ex parte TRO is not a finding on the merits. The court talked about a reasonable likelihood of success on the merits. But it also cited the fact that on this ex parte TRO, the court said, if we don't grant this, this woman is going to be homeless in Green Bay, Wisconsin, in the middle of January. And so, to suggest that somehow that case stands for the proposition that there's an affirmative duty on the sponsor via a family member who's not a sponsor to provide housing. It doesn't follow, and the court properly found as much. Is that a published case? I believe it's unpublished. Yeah, it's unpublished. It's a 2011 WL6888702, Eastern District of Wisconsin, in 2011. So, I think in conclusion, unless your honors have any questions. The trial court considered the factors it was supposed to consider. It made a considered decision, explained those factors that went into its decision. The plaintiff has not demonstrated that that decision was an abuse of discretion, or that the considerations were an abuse of discretion. The lack of a breakdown, line by line, or entry by entry, as to what was included and what was not included. Is explained, if you will, in part by the court's decision referencing that some of the entries on the timesheets were imprecise. But in any event, that's not required when the court exercises its broad discretion in determining what an appropriate fee is under the circumstances. Thank you. Thank you. Briefly, your honor, a couple of points. With respect to the period of time of the first 28 months after the original petition for dissolution of marriage was filed in the matter. There were only one, there was only one issue and dispute between the parties. And that was the amount of support that had to be paid by Imal Panchal, or Amina Panchal in this case, to Jagruti Panchal. As I mentioned before, in the dissolution of marriage matter, there were no children, there were no assets, there were no debts. There was no basis for the assessment of maintenance under the IMDMA. There was no basis for the assessment of attorney fees. Parties had only been married a few months. And under the statute, there wasn't any basis for that relief, which is almost specifically why the I-864 affidavit comes into play. So when we've estimated the cost of the dissolution of marriage action as being $1,300 or $1,400, whatever the number is that I put in the brief, we're including the part of time, the time that we argued only about the dissolution of the parties' marriage. The status of the dissolution of their marriage. Because there wasn't anything else to do other than to dissolve that status. And ultimately, the status was in fact dissolved. Now, the plaintiff in this case filed a petition for dissolution of marriage, then sought leave to file a petition for declaration of invalidity of marriage. So far as I'm aware and so far as the record demonstrates, there was never a petition to withdraw the petition for dissolution of marriage, although the two of them are mutually exclusive. And as a consequence, I guess we had to proceed on both at the time. But the trial court in this case specifically awarded attorney fees for the defense of the petition to declare the invalidity of marriage. And that proceeding commenced within that 23 months. Twenty-eight months. Twenty-three months. So there is a period of time where we would claim the petition for dissolution of marriage was on file, but the only issue in respect to that was the I-864 affidavit of support and the enforceability of that affidavit of support. In respect to the eviction proceeding, it was not defended ever on the basis that we were demanding that Vickrant, and her children, it was defended specifically on the basis that Himal and Veena Panchal, Veena by virtue of the contract between herself and Himal, had obligated themselves to support Jagruti. And the case law that we were able to determine, which is the Woodshields case, which is not a published opinion, evidenced the trial court in the Eastern District of Wisconsin as granting a TRO based on an I-864 affidavit of support. So what we requested of the court in Will County was either A, stay the matter pending the determination of the support obligation in Coles County. And if we ever got to that point, we were going to contest the truthfulness of the allegations in the petition. But we never got to that point because that matter was resolved by an agreement between the parties, which effectively allowed Jagruti to stay in the residence for that period of time and cost her support by virtue of the fact that that was a benefit that was provided to her that the jury got to determine at the trial of the underlying case, and the jury offset the value of that amount against the total award of support that they entered. So I want to be particularly clear because I think we've been directed in a different direction, that this was not a claim that Vikrant Panchal should have provided support or allowed her to live in his residence after the parties separated. This is a claim instead that Amal and Veena Panchal should have provided support, and that support, at least at that period of time, could have included some place for Jagruti and her kids to live at some reasonable value, which is essentially what was eventually determined by the court. The Wood-Schultz case is an I-864 obligation to support case. The judge in that case did decide that the I-864 obligation to support should impose an obligation on the sponsor to provide a place for Jagruti and her kids to live during that particular period of time. And we can only guess, but my guess would be that at the end of that proceeding, because it was an I-864 affidavit of support proceeding, that if the judge was asked to determine what are the total amount of attorney fees that have accrued, the judge would include the cost of that forceful entry and detainer case as a part of the total expense of attorney fees and costs that would be permitted under the obligations imposed by an I-864 affidavit of support. Thank you, Your Honor. Thank you.